**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL G. RYAN, | : | CIVIL ACTION NO. 4:10-CV-1425 |
| | : | |
| Petitioner | : | |
| | : | (Judge Jones) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent | : | |

### REPORT AND RECOMMENDATION

## I. Background.

Petitioner Michael G. Ryan is an inmate at the Federal Correctional Institution at Allenwood ("FCI-Allenwood"), in White Deer, Pennsylvania. On July 9, 2010, he filed an action styled as "Complaint for Declaratory Relief" against the United States[1] alleging breach of his plea agreement. (Doc. 1). Petitioner Ryan seeks declaratory and injunctive relief. He attached exhibits to his "Complaint." (Doc. 1, "Exhibits A-G"). Petitioner also filed an *in forma pauperis* Motion. (Doc. 2).

Petitioner's action has not yet been served on Respondent. We now give preliminary consideration to Petitioner's action pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254 (1977) (applicable to § 2241 petitions under Rule 1 (b)). *See Patton v. Fenton*, 491 F. Supp. 156, 158-59 (M.D. Pa. 1979); *Romero v. Holt*, 2006 WL

---

[1]As will be discussed, because we construe Petitioner's action as a § 2241 Habeas Petition and not as an action for declaratory judgment under breach of contract theory, the United States is incorrectly named as a Defendant in this case. Accordingly, the correct Respondent is David Ebbert, Warden, FCI-Allenwood. *See* 28 U.S.C. § 2242 and § 2243.

3437360 (M.D. Pa.); *Winfield v. Martinez*, 2008 WL 4541945 (M.D. Pa.).[2]

## II. Petitioner's Claims.

Petitioner alleges that on March 20, 1995, he entered into a plea agreement with the United States in the Middle District of Pennsylvania, Criminal No. 94-0127. (Doc. 1, p. 2). Petitioner agreed to plead guilty to 3 counts of related drug charges. (Doc. 1, Ex. B). The pertinent part of Petitioner's plea agreement read:

> I further understand that, if the judge accepts my plea of guilty and the plea agreement entered into between myself and the government, I will be sentenced as follows: count 1, 20 years imprisonment to run concurrent with all other terms of imprisonment, up to a $4,000,000.00 fine, 5 years supervised release, $50.00 special assessment, *as well as the costs of prosecution, imprisonment, probation, or supervised release order* and denial of certain federal benefits.

(Doc. 1, Ex. B) (emphasis added).

The italicized wording in the above quote was redacted and excluded from count 1 in Petitioner's final plea agreement. (Doc. 1, Ex. B). The same wording was redacted and excluded from Petitioner's plea of guilty to counts 2 and 3 as well. (Doc. 1, Ex. B). As such, the stated wording was redacted and excluded from Petitioner's entire final plea agreement. (Doc. 1, Ex. B).[3] On April 4, 1995, Petitioner alleges that he pled guilty to the 3 counts of drug related charges pursuant to the plea agreement he had with the United States. (Doc. 1, p. 2). Petitioner alleges

---

[2]Rule 4 provides in relevant part: "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."

[3] Petitioner's obligation to pay the "*costs of prosecution, imprisonment, probation, or supervised release order*" (emphasis added) appear crossed out as to all 3 counts in his original plea agreement dated April 5, 1995.

that on that same day both parties initialed the redacted and excluded lines referenced above, the District Court acknowledged the plea agreement's alteration and accepted Petitioner's guilty plea. (Doc. 1, Ex. C). Petitioner was taken into custody by the Bureau of Prison's ("BOP") on July 6, 1995, to begin serving his prison sentence. (Doc. 1, p. 3).

On March 18, 2010, Petitioner was summoned to appear before an evaluation team at FCI-Allenwood assembled to inform Petitioner that he had been recommended for Residential Reentry Center ("RRC") placement. Petitioner alleges that at the meeting he was presented with a document requiring his signature for placement in the RRC. (Doc. 1, p. 3). He explains that at the meeting he asked for and received a copy of the Community Based Program ("CBP") Agreement, the Agreement pertaining to his placement in the RRC. (Doc. 1, p. 3). He requested and was granted some time to review the CBP Agreement before signing it. (Doc. 1 , p. 3). The CBP Agreement requires that inmates "contribute to the cost [] of residenc[y]" placement in the RRC. (Doc. 1, Ex. D).

Petitioner alleges that on March 31, 2010, he informed Mr. Beaver, his (Petitioner's) case manager, and Mr. Netzband, his (Petitioner's) unit manager, that he was "unable to enter into the CBP agreement because of its requirement that, '[he] would be expected to contribute to the cost of [his] residence through payments to the contractor.'" (Doc. 1, Ex. D). Petitioner states that he told Mr. Netzband that he would not sign the CBP Agreement because it conflicted with the terms of his 1995 plea agreement which redacted and excluded provisions requiring Petitioner to pay for the costs of his imprisonment. Petitioner alleges that Mr. Netzband subsequently threatened to sanction him if he did not sign the CBP Agreement.

3

Petitioner alleges that on May 7, 2010, Lieutenant Rohrer served him with an Incident Report charging him with refusal to sign the CBP Agreement required to accept his program assignment, BOP Code 306. (Doc. 1, Ex. E). He further alleges that on May 11, 2010, he was summoned for a disciplinary hearing before the Unit Disciplinary Committee ("UDC") which consisted of Unit Manager Netzband and Unit Counselor Thompson. Petitioner claims that prior to the hearing's commencement, Mr. Netzband warned Petitioner that his (Petitioner's) failure to sign the CBP Agreement would result in sanctions against Petitioner. Petitioner was advised that sanctions would include confinement in segregated housing and loss of earned good-time-credit. (Doc. 1, p. 4) At the hearing's conclusion, the UDC found that Petitioner committed the charged offense (Code 306), and sanctioned Petitioner to the loss of his prison job for one year due to his failure to sign the CBP Agreement. (Doc. 1, Ex. F).[4]

On May 13, 2010, Petitioner submitted an Inmate Request to Staff Form regarding his job change due to the sanction imposed by the UDC. (Doc. 1, Ex. G). The prison staff responded to Petitioner's Request as follows:

> You we removed from Unicor do to being found guilty of code 306 REFUSING WORK/PGM ASSIGNMENT and sanctioned to LOSE FOB 1 YEAR on 05-11-2010 by the UDC. You were placed in REC SH1 on 05-12-2010.

(*Id.*).[5]

---

[4] We note that Petitioner has no established right to any particular job in prison, and that the Constitution does not create a property right interest in prison employment. *See Douglas v. BOP*, 2009 WL 1458177 (M.D. Pa.)(citations omitted).

[5] We construe "REC SH1" to mean segregated housing.

4

Petitioner seeks this Court to declare that the BOP policy requiring that he pay the residency cost while in the RRC conflicts with the terms of his plea agreement and that it breaches his plea agreement. (Doc. 1, p. 5). He argues that he relied on the redaction to his plea agreement concerning imprisonment costs when he decided to plead guilty to the 3 related drug charges. (Doc. 1, p. 7). He also seeks this Court to declare that the government caused him harm and breached his plea agreement when it allegedly used coercive conduct to try and gain his signature to the CBP Agreement. (Doc. 1, p. 5).

Petitioner seeks injunctive relief from this Court to stop the BOP's sanctions against him imposed due to his refusal to sign the CBP Agreement. Petitioner claims that "the defendant [the United States] has already inflicted irreparable harm through punitive actions related to the issue at hand, and is threatening additional ongoing sanctions." (Doc. 1, p. 8). Petitioner claims that he suffered harm when his prison job as a factory worker was taken from him after refusing to sign the CBP Agreement. (Doc. 1, p. 8). He asserts that he relied on the income from this job[6] "to provide support to his family, maintain verbal communication with his family through the phone service, pay tuition for a higher education correspondence course, and purchase hygiene and other supplies for day-to-day comfort." (Doc. 1, p. 8). Additionally, Petitioner claims that he suffers psychologically since being removed from his job as a factory worker. (Doc. 1, p. 9). He further claims that his removal from his prison job upset his rehabilitative efforts to prepare for release to society. (Doc. 1, p. 9). Petitioner seeks injunctive relief from this Court to stop any further punitive

---

[6] Petitioner states that he has subsequently obtained a new prison job which pays less than $10 per month. He states that his prior prison job from which he was allegedly removed paid on average $430.00 per month. (Doc. 1, p. 8).

5

sanctions against him by the BOP for his refusal to sign the CBP Agreement.[7]

## III.  Discussion.

*1.  Petitioner's action is a § 2241 Habeas Petition*

As a preliminary matter, we find that Petitioner's "Complaint" should be construed as a petition for habeas corpus, pursuant to 28 U.S.C.  § 2241, and not as a Complaint for declaratory judgment under breach of contract theory.  As such, we will construe Petitioner's challenge to the BOP policy requiring him to sign the CBP Agreement and pay his residency costs with respect to his RRC placement as a 2241 habeas petition.

As stated, Petitioner seeks this Court to declare that the BOP policy requiring him to sign the CBP Agreement violates his plea agreement which he claims was a contract with the United States. (Doc. 1, p. 10).  Petitioner also seeks this Court to preclude prison staff from imposing any more sanctions on him due to his refusal to sign the CBP Agreement.  He argues that he failed to exhaust his administrative remedies because exhaustion in this case would be "futile or inadequate."  (Doc. 1, p. 10).  Petitioner argues that exhaustion would be futile because he is not challenging BOP policy, but rather seeking "declaration of his rights secured by his plea agreement" with the United States.  (Doc. 1, p. 10).

---

[7]Petitioner alleges that Mr. Netzband, his unit manager, promised him that "he (Petitioner) would be sanctioned on a regular basis" until he signed the CBP Agreement and complied with the RRC program.

As mentioned, we find that Petitioner's action amounts to a habeas petition, and we will treat it as such.[8]  The Third Circuit Court in *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 241-44 (3d. Cir. 2005), explained that when an inmate challenges the "execution" of his prison sentence, a habeas petition is the proper way to proceed.  Recently, in *Murray v. Grondolsky*, 2009 WL 2044821 (D.N.J.), the District Court construed an inmate's challenge to the BOP policy at issue in the present case as a habeas petition.  *See Murray*, 2009 WL 2044821 *affirmed by* 2010 WL 548308 (C.A.3. (N.J.)).  In *Murray*, the Third Circuit noted as follows:

> We note that the District Court treated Murray's petition as a petition for writ of habeas corpus instead of a petition for mandamus.  This Court has held that a habeas petition pursuant to 28 U.S.C. § 2241 is the appropriate way to challenge BOP regulations (including placement in a community correction center or halfway house) because what is at issue is the "execution" of the prisoner's sentence and not the "conditions" of his confinement.  *See Woodall*, 432 F.3d at 241-44.

2010 WL 548308, * 2, n. 2.

In our case, Petitioner Ryan challenges the execution of his sentence when he challenges the requirement that he sign the CBP Agreement and contribute financially to his residency in the RRC.  Although Petitioner attempts to masquerade his claim as a breach of contract, at issue is whether he must comply with the BOP policy requiring his payment upon entering the RRC which placement was recommended as part of the completion of Petitioner's federal sentence.  Thus, as in *Murray* we consider our Petitioner's challenge as a habeas petition.[9]

---

[8]  As noted above, the United States is incorrectly named as Defendant. David Ebbert, Warden, FCI Allenwood, is the correct Respondent to Petitioner's habeas petition.

[9] We will recommend that Petitioner's *in forma pauperis* Motion (Doc. 2) be denied since his Motion shows that he can pay the $5.00 habeas filing fee.

*2. Petitioner's failure to exhaust his BOP Administrative Remedies*

Because we construe Petitioner's instant challenge as a habeas petition, he is required to exhaust his administrative remedies before filing his writ of habeas corpus pursuant to 28 U.S.C. § 2241.  *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996); *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981) (*per curiam*).  Here, Petitioner Ryan recognizes that he has not exhausted his administrative remedies.  (Doc. 1, p.10).  He argues that it would be futile to exhaust his administrative remedies because he claims he is not challenging BOP policy, but rather, is  seeking a declaration of his rights under his plea agreement he entered with the United States.[10]  Since we construe Petitioner's challenge as a habeas petition, we find that he is required to exhaust his administrative remedies which he has admittedly failed to do.  *See Malvestuto v. Martinez*, 2009 WL 2876883 (M.D. Pa.).  The Court in *Malvestuto* stated:

> Although Section 2241 does not contain a statutory exhaustion requirement, courts in the United States Court of Appeals for the Third Circuit have consistently required an inmate     to exhaust his administrative remedies prior to petitioning for a writ of habeas corpus.  *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981) (per curiam)); e.g., *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000).  Exhaustion is required for the following reasons: "(1) allowing appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy."  *Moscato*, 98 F.3d at 761-62 (3d Cir. 1996) (citations omitted).

*Malvestuto*, 2009 WL 2876883 at *2; *McCooey v. Martinez*, 2010 WL 411744, * 2 (M.D. Pa.).

---

[10]     It is unclear whether Petitioner seeks placement in the RRC without being required to pay towards the cost or whether he completely opposes his placement in the RRC.  We find that Petitioner should clarify this ambiguity through the BOP's administrative remedy process.

The *Malvestuto* Court then outlined the procedure utilized by federal inmates which was established by the BOP and set forth at 28 C.F.R. §§ 542.10-542.19, stating:

> Pursuant to this protocol, an inmate first must present his complaint to staff, and staff must attempt to resolve informally any issue before an inmate files a request for administrative relief. *See* § 542.13(a). If informal resolution proves unsuccessful, the inmate may raise the complaint with the warden of the institution where he or she is confined. *Id*. An inmate has twenty calendar days from the date of the alleged injury within which to complete this informal resolution process, he or she may appeal the decision to the Regional Office and the General Counsel of the BOP. *See* § 542.14(a). If an inmate is dissatisfied with the response received during the informal resolution process, he or she may appeal the decision to the Regional Office and General Counsel of the BOP. *See* §542.15 A BOP decision is not final -and thus not reviewable-until relief has been denied by the General Counsel's Office.

*Id.*

In this case, as discussed, Petitioner Ryan acknowledges that he has failed to exhaust his administrative remedies with the BOP. (Doc. 1, p. 10). Accordingly, we will recommend that his habeas petition be dismissed for failure to exhaust his administrative remedies. *Malvestuto* at *4; *McCooey v. Martinez*, 2010 WL 411744, *4.

*3. Petitioner's Action is without Merit even if it is a Declaratory Judgment Complaint*

Even if we were to accept Petitioner Ryan's action as a Declaratory Judgment Complaint under breach of contract theory, his claim is without merit. The Third Circuit Court in *Murray v. Grondolsky*, 2010 WL 548308, affirmed the District Court's dismissal of Petitioner Murray's similar claim as meritless since it recognized the validity of the CBP's requirement that he contribute financially to his RRC placement. *See Murray*, 2010 WL 548308 *2. The Third Circuit Court stated:

We agree with the District Court that Murray has failed to establish that he has a clear and indisputable right to pre-release placement in an RRC without participating in the subsistence program. The BOP is authorized to collect a subsistence fee from a federal prisoner for the costs of his confinement in community corrections centers, including RRC's. The subsistence program, which requires inmates to pay a portion of the cost of the RRC, is a condition of placement in the RRC imposed to encourage financial responsibility in order that inmates may reintegrate into society. The subsistence program arises from BOP policy and emanates from the BOP's general statutory authority to manage prisons. *See* 18 U.S.C. §§ 4042(a), 3624(c)(1).

*Murray*, 2010 WL 548308 *2.

Thus, in our case, Petitioner Ryan's claim lacks merit even if his action is construed as a Complaint for Declaratory Judgment.

**IV. Recommendation.**

Based upon the foregoing, it is respectfully recommended that Petitioner Ryan's Petition for Writ of Habeas Corpus (Doc. 1) be summarily dismissed. It is also recommended that Petitioner's *in forma pauperis* Motion (Doc. 2) be denied since Petitioner indicates that he receives between $20 to $50 per month from family members and since he has a prison job. It is further recommended that Petitioner be directed to pay the $5.00 habeas petition filing fee within ten (10) days.

> **s/ Thomas M. Blewitt**
> **THOMAS M. BLEWITT**
> **United States Magistrate Judge**

**Dated: August 4, 2010**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL G. RYAN, | : | CIVIL ACTION NO. 4:10-CV-1425 |
| | : | |
| Petitioner | : | |
| | : | (Judge Jones) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **August 4, 2010.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen (14)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                        s/ Thomas M. Blewitt
                                        THOMAS M. BLEWITT
                                        United States Magistrate Judge


Dated: August 4, 2010